<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| DENISE YOUNG, | : | |
| | : | **Civil Action No. 22-7452 (SRC)** |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION & ORDER** |
| | : | |
| CHIPOTLE MEXICAN GRILL OF COLORADO, LLC, XYZ COMPANY 1-4, ABC CORPORATION 1-5, JOHN DOES 1-10, and JANE DOES 1-10, | : | |
| | : | |
| Defendants. | : | |

**CHESLER**, <u>District Judge</u>

This matter comes before the Court on Defendant Chipotle Mexican Grill of Colorado, LLC's ("CMG" or "Defendant") Motion to Exclude Expert Testimony and for Summary Judgment under Federal Rule of Evidence 702 and Federal Rule of Civil Procedure 56, (Dkt. No. 41). Plaintiff Denise Young ("Young" or "Plaintiff") filed a brief in opposition to Defendant's motion on April 14, 2025, (Dkt. No. 42).[1] Defendant filed a reply brief in further support of its motion on May 1, 2025, (Dkt. No. 47). Plaintiff filed a sur-reply brief on May 8, 2025, (Dkt. No. 48), which this Court has agreed to consider for purposes of deciding Defendant's motion. The Court has reviewed the parties' briefs and proceeds to rule without oral argument, pursuant to Federal Rule

---

[1] The Court notes that Plaintiff filed a letter requesting permission from Magistrate Judge Cathy L. Waldor to "paper-file" documents with the Court on April 15, 2025, (Dkt. No. 43). The Court received a hard copy of Plaintiff's opposition papers and upon an inspection of the papers, determined that the paper copies were identical to the e-filed version of Plaintiff's opposition and thus took no further action on the matter.

of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, Defendant's motion will be **GRANTED** in its entirety.

## I. FACTUAL BACKGROUND

This dispute stems from Plaintiff's allegation that she "contracted 'Salmonella Gastroenteritis from food poisoning' as a result of consuming food purchased by her son for her on June 11, 2022" from a CMG location in Newark, New Jersey. (Dkt. No. 41-1, Defendant's Rule 56.1 Statement of Undisputed Material Facts ("D-SUMF") ¶ 3.) On June 11, 2022, Plaintiff's son purchased a "Pollo Asado Bowl" and "Queso Blanco" meal at a CHG in Newark. (Dkt. No. 42-2, Plaintiff's Rule 56.1 Statement of Undisputed Material Facts ("P-SUMF") ¶ 1.) Plaintiff's son watched the bowls being prepared at the restaurant, transported the bowls home in his car, and placed them in the refrigerator at Plaintiff's house on June 11, 2022 at an unknown time. (D-SUMF ¶¶ 5–7.) On June 11, 2022, Plaintiff let her home to attend an event in Newark, New Jersey. (Id. ¶ 9.) The next day, June 12, 2022, Plaintiff removed one of the bowls from the refrigerator and reheated half of the contents in a frying pan in her kitchen and consumed the meal. (Id. ¶ 10; Dkt. No. 42-1, Pl.'s Resp. to ¶ 10.) Later that same day, Plaintiff reheated another portion of the bowl in her own kitchen and consumed the meal. (D-SUMF ¶ 11; Dkt. No. 42-1, Pl.'s Resp. to ¶ 11.) Plaintiff consumed a meal of oatmeal on June 10, 2022. (D-SUMF ¶ 12.) Plaintiff's sister keeps a pet turtle in Plaintiff's home that Plaintiff contends never leaves its tank. (D-SUMF ¶ 13; Dkt. No. 42-1, Pl.'s Resp. to ¶ 13.)

Later in the night on June 12, 2022, Plaintiff began feeling nauseous and started to have "vomiting, abdominal pain, diarrhea, dizziness and headaches." (P-SUMF ¶ 4.) Plaintiff's symptoms lasted overnight into June 13, 2022. (Id. ¶ 5.) Plaintiff then "presented to the Emergency Department [("ED")] at Cooperman Barnabas Medical Center ("Cooperman") on June

13, 2022 complaining of abdominal pain and vomiting." (D-SUMF ¶ 15.) At Cooperman, Plaintiff was examined and treated by the examining physician at the ED, Dr. Christopher Freer. (Id. ¶ 16.) Dr. Freer diagnosed Plaintiff with "abdominal pain, acute." (Id.) Dr. Freer's ED notes also stated, "[a]fter the evaluation in the Emergency Department, my clinical impression is acute abdominal pain; consider food poisoning." (P-SUMF ¶ 9.) Plaintiff was not tested for Salmonella at Cooperman. (D-SUMF ¶ 17.) Nor did Plaintiff receive a formal diagnosis of Salmonella Gastroenteritis at Cooperman. (Id. ¶¶ 19, 21.)

At Cooperman, Plaintiff was treated with medication for her abdominal pain and later discharged that same evening. (D-SUMF ¶ 18; P-SUMF ¶¶ 21, 26.) Plaintiff was "discharged with generic paperwork and educational materials which included a description of causes, risks and symptoms generally of 'Salmonella Gastroenteritis, Adult.'" (D-SUMF ¶ 20; P-SUMF ¶¶ 11–12, 34.) "Presentation of the Generic Educational Materials regarding Salmonella Gastroenteritis was not a diagnosis of same by Dr. Freer or anyone else at Cooperman." (D-SUMF ¶ 21.) Dr. Freer was unable to attribute any specific source or cause to Plaintiff's symptoms and "identified Plaintiff's abdominal pain as a general diagnosis that lacks any specific attributed cause." (Id. ¶¶ 22–23.)

At some time after June 13, 2022, Plaintiff filed a written letter complaint with the Newark Department of Health ("DOH"). (Id. ¶ 26.) The Newark DOH investigated the complaint and issued a report on September 6, 2022, indicating no health violations by CMG and "no reason for complaint." (Id. ¶ 27.) Other than Plaintiff's complaint, no other food complaints were made at this CMG location for items sold on or around June 11, 2022. (Id. ¶ 29.) The New Jersey State Department of Health also issued a satisfactory Sanitation Inspection Report for the CMG restaurant located at 222 Market Street on June 20, 2022. (Id. ¶ 31.)

On September 9, 2022, Plaintiff filed a complaint in the Superior Court of New Jersey against Defendant and amended that complaint on September 15, 2022. (Dkt. No. 1-1.) The Amended Complaint asserts five causes of action, two Negligence-based claims, Negligent Infliction of Severe Emotional Distress, Breach of Implied Warranty of Fitness for Merchantability, and Res Ipsa Loquitur, (id. at 11–17 ("Am. Compl.")). Plaintiff's Amended Complaint demands judgment for compensatory and punitive damages, with costs and attorney's fees. (Id. at 16.) CMG filed a notice of removal to the District of New Jersey on December 21, 2022. (Dkt. No. 1.)

On March 27, 2025, Defendant filed the instant motion for summary judgment and moved to exclude Plaintiff's proposed expert. (Dkt. No. 41 ("Def.'s Mot.").) Plaintiff opposed Defendant's motion on April 14, 2025. (Dkt. No. 42 ("Pl.'s Opp'n").) Defendant filed a reply in further support of its motion on May 1, 2025. (Dkt. No. 47 ("Def.'s Reply").) Plaintiff filed a sur-reply on May 8, 2025. (Dkt. No. 48 ("Pl.'s Sur-Reply").)

## II. LEGAL STANDARD

### A. Motion to Exclude Expert Testimony

Under the Federal Rules of Evidence, it is the trial judge's job "to act as a 'gatekeeper' to ensure that any and all expert testimony or evidence is not only relevant, but also reliable." Kannankeril v. Terminix Int'l, Inc., 128 F.3d 802, 806 (3d Cir. 1997) (citing Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589 (1993)). Accordingly, the Court analyzes the admissibility of an expert's testimony under Federal Rule of Evidence 702, which requires that: "(1) the proffered witness must be an expert; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge; and (3) the expert's testimony must assist the trier of fact." Id. (citing In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741–42 (3d Cir. 1994)).

Admissibility under Rule 702's "fit requirement" "depends in part on 'the proffered connection between the scientific research or test result to be presented and particular disputed factual issues in the case.'" Holman Enters. v. Fidelity and Guar. Ins., 563 F. Supp. 2d 467, 471 (D.N.J. 2008) (quoting In re Paoli, 35 F.3d at 743). "The burden is on the proponent of the testimony to prove its admissibility by a preponderance of proof." Id. (citation omitted).

An expert opinion is therefore inadmissible "if the court concludes that an opinion based upon particular facts cannot be grounded upon those facts." Fedorczyk v. Caribbean Cruise Lines, Ltd., 82 F.3d 69, 75 (3d Cir. 1996). "[I]f an expert opinion is based on speculation or conjecture, it may be stricken." Id. Importantly, expert testimony on "what the law required" or "the governing law" must also be excluded. See Holman Enters., 563 F. Supp. 2d at 472 (quoting United States v. Leo, 941 F.2d 181, 196–97 (3d Cir. 1991)).

B. Motion for Summary Judgment

Federal Rule of Civil Procedure 56(a) provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See also Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986) (construing the similarly worded Rule 56(c), predecessor to the current summary judgment standard set forth in Rule 56(a)). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant and material if, under the substantive law, the dispute would affect the outcome of the suit. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, a district court "must view the evidence 'in the light most favorable to the opposing party.'" Tolan v. Cotton, 572 U.S. 650, 657 (2014) (quoting Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970)). The court may not make credibility

determinations or engage in any weighing of the evidence. See Anderson, 477 U.S. at 255; see also Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (holding same).

Once the moving party has satisfied its initial burden, the nonmoving party must establish the existence of a genuine issue as to a material fact to defeat the motion. See Jersey Cent. Power & Light Co. v. Lacey Twp., 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing a motion for summary judgment cannot rest on "mere allegations"; instead, it must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; see also Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) ("[U]nsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment."). "By evidence, the Rule means 'materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials.'" Heine v. Comm'r of Dep't of Cmty. Affs. of N.J., 337 F. Supp. 3d 469, 476–77 (D.N.J. 2018) (quoting Fed. R. Civ. P. 56(c)(1)(A)).

"If the nonmoving party has failed 'to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be "no genuine issue of material fact."'" Id. at 476 (quoting Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992)). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. (quoting Katz, 972 F.2d at 55).

### III. DISCUSSION

#### A. Defendant's Motion to Exclude Plaintiff's Expert, Marvin Winston

Defendant argues that the Court should exclude the expert testimony of Marvin Winston because his purported opinion is both substantively and procedurally deficient. (Def.'s Mot. at 7.) Defendant argues that the report of Plaintiff's proposed expert, Mr. Winston, (the "Winston Report") is procedurally deficient, thus rendering the report inadmissible because Plaintiff did not (a) produce the Winston Report in a timely manner, (b) accompany the Winston Report with the expert disclosures required by Rule 26(a)(2)(B), nor (c) produce Mr. Winston's CV. (Id. at 7–10.) Next, Defendant argues that the Winston Report is substantively deficient because his conclusions are speculative, "his methodology is not reliable and his prospective testimony would not assist the trier of fact in resolving the relevant factual disputes of the case." (Id. at 10.) More specifically, Defendant argues that while Mr. Winston refers to himself as a "Consulting Food Scientist" in his report, "there is no evidence or expert material presented to explain what that means in the context of the Plaintiff's allegations, or how if at all it qualifies him to offer the opinions contained therein," and also, Mr. Winston did not perform any testing of the food at issue here. (Id.) Defendant also argues that Mr. Winston "is not qualified to make a diagnosis or draw a medical causation link between Plaintiff's meal and her alleged injury" and the Winston Report lacks probative value. (Id. at 11.)

In response to the procedural deficiencies Defendant raises, Plaintiff argues that she disclosed Mr. Winston as an expert to the Defendant and the Court and that any failure to make disclosures is "harmless because the defendant received and read the report and has an opportunity to formulate a reply to challenge the CV as well as the, qualifications data and other cases which during the last 4 years Mr. Winston has testified as a witness," which Plaintiff attached as exhibits

to her opposition papers. (Pl.'s Opp'n at 13–14.) Plaintiff also argues that the doctrine of unclean hands is applicable because Defendant sent its own expert report to an "Old Invalid Email Address Causing the Undersigned to not Timely Receive it," though Plaintiff does not specify which of Defendant's expert reports were not timely received. (Id. at 15.)

In addressing the substantive issues with the Winston Report, Plaintiff argues that Mr. Winston provided adequate evidence to show that he is a qualified expert and lists his experience and prior testimony as support for his qualifications. (Id. at 16–26.)

The Court, however, is not persuaded. Putting aside the procedural deficiencies and Plaintiff's failure to comply with Rule 26(a)(2)(B), the substantive issues Defendant raised are significant and as such, the Court finds that the proposed testimony of Mr. Winston does not satisfy the requirements of Rule 702.

Federal Rule of Evidence 702 requires that: "(1) the proffered witness must be an expert; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge; and (3) the expert's testimony must assist the trier of fact." Kannankeril, 128 F.3d at 806 (citing In re Paoli, 35 F.3d at 741–42). While the Court does not doubt Mr. Winston's purported qualifications as a "Consulting Food Scientist" and that he testified as an expert in other proceedings related to that title, he is not qualified to opine on the medical causation for Plaintiff's symptoms on June 12, 2022 here. Mr. Winston is not a medical doctor and, as Defendant states in its moving brief, there is "no evidence or expert material presented to explain what" Mr. Winston's purported food science expertise "means in the context of the Plaintiff's allegations, or how if at all it qualifies him to offer the opinions contained therein." (Def.'s Mot. at 10.) Additionally, Mr. Winston identified no methodology to support his conclusion that Plaintiff "was served food at Chipotle Mexican Grill which resulted in her contracting food poisoning"—a medical diagnosis—

and Mr. Winston himself admits that he is uncertain as to what the "causative organism" of Plaintiff's symptoms was because no tests were performed to make such a determination. (Dkt. No. 41-16, ("Winston Report") at 2.) Without proper medical qualifications and any identified methodology, Mr. Winston's opinion simply will not help the trier of fact. See, e.g., Kim v. Marina Dist. Dev. Co. LLC, 488 F. App'x 545, 547 (3d Cir. 2012) (finding the District Court did not err in precluding plaintiff's "medical expert from testifying about the cause of [his] food poisoning" because "the expert's opinion in that regard was based on evidence obtained from [plaintiff's] counsel, instead of from [plaintiff]" and "the expert had neither examined [plaintiff] nor taken a thorough case history, thereby precluding the expert from obtaining information necessary to form an opinion on causation").

The Court does not see anything in Mr. Winston's report that leads to the conclusion that Plaintiff suffered from salmonella poisoning as alleged, and more significantly, the Court does not see anything in the Winston Report that would help the trier of fact determine whether Plaintiff suffered salmonella poisoning from consuming Defendant's food.

As the 2023 Amendments to Rule 702 make clear, "the rule has been amended to clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule." Plaintiff has failed to demonstrate by a preponderance of the evidence that Mr. Winston's proffered testimony meets the admissibility requirements of Rule 702 and will therefore be excluded.

## B. Defendant's Motion for Summary Judgment

### i. Negligence Claims (Counts I and II)

Defendant argues that it is entitled to summary judgment on the first and second counts of Plaintiff's Amended Complaint. (Def.'s Mot. at 14.) These two counts generally allege that Defendant "negligently prepared and/or handled foods," served such foods to Plaintiff contaminated with salmonella organisms, and this negligence "caused serious injuries to the Plaintiff" because she "ended up in the hospital due to salmonella bacteria food poisoning" and "lost time from work." (Am. Compl. at 2–3.) Defendant argues that summary judgment is warranted here in its favor because Plaintiff cannot show a breach of any duty or any resulting injury. (Def.'s Mot. at 14.) In turn, Plaintiff argues that it showed a breach of duty through "circumstantial evidence," (Pl.'s Opp'n at 30), and that there remains a material dispute "regarding whether the defendant sold plaintiff food that was contaminated with Salmonella (and or eColi)." (Id. at 34.)

To establish a cause of action for negligence in New Jersey, a plaintiff must demonstrate four elements: "(1) a duty of care, (2) a breach of [that] duty, (3) proximate cause, and (4) actual damages." Polzo v. Cnty. of Essex, 196 N.J. 569, 584 (2008) (alterations omitted) (quoting Weinberg v. Dinger, 106 N.J. 469, 484 (1987)).

Viewing the evidence in the light most favorable to Plaintiff, there is no evidence to support Plaintiff's contention that Defendant breached any duty owed to Plaintiff. While Plaintiff is correct that New Jersey courts "have accepted circumstantial evidence of causation," any such circumstantial evidence here does not support Plaintiff's allegations. See, e.g., Nicholson v. Bloomin Brands, Inc., 2018 WL 3614355, at *5 (N.J. App. Div. July 30, 2018) ("Absent direct

-10-

evidence of Salmonella contamination, courts have accepted circumstantial evidence of causation, including unsanitary conditions at the defendant restaurant and health code violations.").

For example, Defendant presented evidence that (1) the New Jersey State Department of Health issued a Satisfactory Sanitation Inspection Report for the restaurant on June 20, 2022, only nine (9) days post-incident, (see Def.'s Mot., Ex. K), (2) in response to a complaint Plaintiff filed with the Newark DOH, the Newark DOH conducted an inspection of the CMG location and issued a report on September 6, 2022, which observed no violations at the time of the inspection and commented that there was "No reason for complaint," (id., Ex. M ¶ 5, Ex. J), and (3) the General Manager of the Subject CMG reviewed the "Product Mix Report" for June 11, 2022 and noted that no other food-related complaints were made for items sold at that CMG location on that date, (id., Ex. M ¶¶ 6–7). Plaintiff presented no evidence to counter this information.

Plaintiff did not depose the General Manager nor any staff member who was working at the CMG location on the date the food was sold to Plaintiff's son and Plaintiff's son testified during his deposition that he watched the CMG workers make the food and watched the food as the workers put it in to-go bags, and then left with the food. (Id., Ex. E ("Tyrick Dep. Tr.") at 38:4–41:7.) There is simply no evidence in the record of salmonella contamination at the CMG location nor any evidence that CMG engaged in a negligent food handling practice. See Nicholson, 2018 WL 3614355, at *6 (finding no genuine issue of material fact, in part, where plaintiff "could not identify the specific [restaurant] food, employee, sanitation or cleaning practice that caused [the] Salmonella infection"). As a result, there is no genuine dispute of material fact to bring to a jury the issue of whether CMG breached any duty owed to Plaintiff.

As to the causation element, Defendant argues that Plaintiff "presented no evidence that any act or omission on the part of CMG or any defect in the food served by CMG was the proximate

cause of Plaintiff's alleged injury." (Def.'s Mot. at 16).  While Plaintiff argues that it presented "adequate [c]ircumstantial evidence" that Defendant was "negligent and caused her to develop symptoms food poisoning [sic] that caused her to seek medical care in the Emergency Room," (Pl.'s Opp'n at 31), the evidence presented to the Court fails to make such a showing.

As discussed, Plaintiff provided no evidence that shows the meal Plaintiff consumed from Defendant was contaminated and thus the cause of Plaintiff's symptoms.  There is also a lack of evidence in the record demonstrating that Plaintiff's symptoms that began on June 12, 2022 were due to salmonella (or E. Coli) poisoning.[2]  Rather, the evidence shows that Plaintiff's diagnosis was "Abdominal pain, acute." (Def.'s Mot., Ex. I at 3.)  The treating physician at Plaintiff's June 13, 2022 hospital visit, Dr. Christopher Freer, also wrote in his treatment notes that, "[a]fter the evaluation in the Emergency Department, my clinical impression is acute abdominal pain; consider food poisoning."[3] (Id. at 4.)  Dr. Freer's notes went on to state, "PLAN: Discharge home.  Patient received written and verbal instructions regarding this condition. . . ."  (Id.)  Those written instructions were described in Dr. Freer's notes as "the following educational materials: Work excuse Shabunia (Custom), Salmonella Gastroenteritis, Adult, Abdominal Pain, Adult, Easy-to-Read." (Id. at 6.)

---

[2]  Plaintiff identifies E. Coli as another potential source for her symptoms in her opposition brief, but this assertion likewise lacks any evidentiary basis.

[3]  The Court notes that Plaintiff's contention that Defendant "hid" Dr. Freer from Plaintiff as some kind of conspiracy between Defendant and Dr. Freer is a non-sequitur. (See Pl.'s Opp'n at 14–15.) Any alleged misconduct on behalf of Defendant is negated by the fact that Dr. Freer was ultimately obtained and deposed and his testimony lends no support towards Plaintiff's claims.  Plaintiff's unacceptable and unprofessional ad hominin attacks towards Defendant are unsupported by any evidentiary submission.  Such ad hominin attacks have no place in this Court and will be disregarded as a non-sequitur.

At the deposition of Dr. Freer, Dr. Freer, however, clarified that "those discharge instructions, . . . work excuse, salmonella, [the medical scribe] didn't write that in. When I put into the discharge library, what I'm choosing for the patient, it automatically populates back into the note." (Def.'s Mot., Ex. H at 54:11–15.) When asked why he provided Plaintiff with the Salmonella Gastroenteritis discharge instructions, Dr. Freer responded:

> I don't remember why I picked that exact discharge instructions, but gastroenteritis is to give the patient when they're supposed to be hydrated, what they're supposed to look out for, what they should do, what they should eat. So, it's a library of discharge instructions that you choose from. And I chose that one.

(Id. at 53:19–54:1.)

In his deposition, Dr. Freer also confirmed that "the diagnosis is not salmonella," (id. at 50:18), and that "her diagnosis is the abdominal pain, her discharge instructions were salmonella gastroenteritis and abdominal pain," (id. at 86:4–6). And while Dr. Freer testified that "multiple things can cause abdominal pain," and agreed that Salmonella Gastroenteritis can be one of those things, he never provided any testimony or evidence as to the cause of Plaintiff's symptoms here and no evidence that he diagnosed Plaintiff with salmonella poisoning. (See id. at 89:8–90:7.) Rather, Dr. Freer's testimony that Plaintiff's diagnosis could be caused by a number of things negates Plaintiff's cause of action. Plaintiff's allegation that Dr. Freer "diagnosed her with Salmonella," (Pl.'s Opp'n at 9), is unsupported by the evidentiary record because Plaintiff's own medical records and Dr. Freer's deposition testimony negate this assertion. Further, though Plaintiff attempts to designate treating physician Dr. Freer as her medical expert in this case through her opposition brief, even if this designation were procedurally proper, Dr. Freer's testimony lends no support to Plaintiff's claims. Similarly, while the Court already found that Plaintiff's proposed expert, Mr. Winston, does not meet the standards of Rule 702 and is thus not qualified as an expert in this case, his own conclusion stated that he too "cannot be certain as to

-13-

whether the causative organism was Salmonella or E-Coli or other foodborne pathogen as no conclusive tests were performed at the hospital for the purpose of organism identification in her blood or stool samples." (Winston Report at 2.)

The Court does not see any medical evidence of salmonella poisoning nor any medical evidence of a causal relationship between the meal at issue here and Plaintiff's June 12, 2022 symptoms in the record. Accordingly, there are no facts presented upon which a juror or an expert could conclude that Plaintiff suffered from salmonella poisoning from CMG because a fact finder could only guess or speculate as to the proximate cause of Plaintiff's symptoms with the evidence in the record.

As Plaintiff could not identify the specific CMG food item, employee, sanitation or cleaning practice that caused Plaintiff's symptoms, nor could Plaintiff identify any evidence to support her contention that she suffered from salmonella poisoning, Plaintiff does not raise a genuine issue of material fact. See, e.g., Nicholson, 2018 WL 3614355, at *5–6. The Court therefore finds in Defendant's favor on Plaintiff's negligence-based Counts I and II as a matter of law.

### ii. Negligent Infliction of Severe Emotional Distress (Count III)

Defendant also argues that it is entitled to summary judgment on Plaintiff's third cause of action for negligent infliction of severe emotional distress. In New Jersey, "the tort of negligent infliction of emotional distress has been recognized only in limited circumstances." Gupta v. Asha Enters., LLC, 422 N.J. Super. 136, 151 (App. Div. 2011). Those circumstances include "zone of risk" cases where a defendant's conduct placed a plaintiff in "a reasonable fear of immediate personal injury." See id. at 151–52 (discussing Falzone v. Busch, 45 N.J. 559 (1965)). They also include "bystander" cases where a bystander plaintiff has a "marital or intimate family

relationship" with one harmed by a defendant's negligence. See id. at 152 (discussing Portee v. Jaffee, 84 N.J. 88 (1980)). Plaintiff's case fits neither of these situations. Plaintiff argues that Defendant "placed [her] in the zone of danger" by serving her "contaminated food that caused her to sustain fear and emotional distress of the unknown after developing vomiting, diarrhea, abdominal pain and vomiting warranting admission into a medical facility." (Pl.'s Opp'n at 36.) The "zone of risk" situation, however, provides that a "defendant's negligent conduct placed the plaintiff in 'a reasonable fear of immediate personal injury.'" Jablonowska v. Suther, 195 N.J. 91, 103 (2008) (quoting Falzone, 45 N.J. at 569). Given the lack of evidence to support Plaintiff's negligence claims, and the fact that Plaintiff was not present in the CMG location where the alleged negligence occurred, there is no dispute of material fact regarding this cause of action. The Court grants Defendant's motion for summary judgment in its favor on Count III of Plaintiff's Amended Complaint as a matter of law.

### iii. Breach of Implied Warranty of Fitness for Merchantability (Count IV)

The Amended Complaint asserts a fourth cause of action for breach of implied warranty of fitness for merchantability on the basis that Defendant warranted that the items on its menu were safe for consumption, but ultimately were unsafe because "it contained Salmonella bacteria." (Am. Compl. at 4–5.) Defendant argues that it is entitled to summary judgment on this count because of the "the absence of evidence that the food from CMG was the proximate cause of her claimed illness, symptoms or any post-incident medical condition." (Def.'s Mot. at 24–25.) The Court agrees.

In New Jersey, "[i]n order for the implied warranty of merchantability to be breached, the product at issue must have been defective or not fit for the ordinary purpose for which it was intended." Lieberson v. Johnson & Johnson Consumer Cos., Inc., 865 F. Supp. 2d 529, 542 (D.N.J.

2011) (citation omitted).  There is no evidence in the record of any defect with the meal Plaintiff consumed from CMG.  As a result, there is no disputed issue for trial and summary judgment is granted in favor of Defendant on Count IV of Plaintiff's Amended Complaint as a matter of law.

### iv.  Res Ipsa Loquitur (Count V)

The last count in the Amended Complaint generally alleges that on June 12, 2022, "salmonella bacteria existed in Plaintiff[']s body" and such bacteria "could not have entered the Plaintiff[']s body but for negligent handling and contamination of the chicken and cheese that was present and in the control of" Defendant.  (Am. Compl. at 5–6.)  Defendant argues that summary judgment should be granted in its favor on this res ipsa loquitur claim because Plaintiff cannot show that she suffered from any foodborne illness and the meal Plaintiff consumed was "far outside of the control of Defendant."  (Def.'s Mot. at 25–27.)  Plaintiff argues that she provided medical evidence through Dr. Freer's notes of Plaintiff's emergency room visit, (see Pl.'s Opp'n at 37), but as previously discussed, this evidence does not establish that Plaintiff suffered from salmonella poisoning, nor any other identified foodborne illness.  Plaintiff further argues that "[t]he food that plaintiff ate was in the exclusive control of Chipotle because Defendant Chipotle sold the food to the plaintiff."  (Id. at 37–38.)  This argument, however, is belied by the evidentiary record.

Plaintiff's son purchased the meal at issue a day prior to when Plaintiff consumed the meal.  (P-SUMF ¶ 1.)  Plaintiff's son also handled the meal from when it left the CMG location until it was placed in a refrigerator at Plaintiff's home.  (D-SUMF ¶¶ 6–7.)  Plaintiff left her home and attended a concert on the day the meal was purchased.  (Id. ¶ 9.)  The following day and prior to eating the meal, Plaintiff "reheated" it in a frying pan in her kitchen.  (Id. ¶ 10.)  Later that day,

Plaintiff reheated the remaining portion of the meal in a frying pan before consuming the meal. (Id. ¶ 11.)

"Res ipsa loquitur is an equitable doctrine that allows, in appropriate circumstances, a permissive inference of negligence to be drawn against a party who exercises exclusive control of an instrumentality that malfunctions and causes injury to another." McDaid v. Aztec W. Condo. Assoc., 234 N.J. 130, 135 (2018). Based upon the evidentiary record before the Court, this case does not present a situation where the doctrine of res ipsa loquitur is applicable. Even viewing the evidence in a light most favorable to Plaintiff, there are no facts that support Plaintiff's argument that the meal was in Defendant's exclusive control. The Court thus grants summary judgment in Defendant's favor on Count V of the Amended Complaint as a matter of law.

\*   \*   \*

For these reasons,

**IT IS** on this 26th day of June, 2025

**ORDERED** that Defendant's Motion to Exclude Expert Testimony and for Summary Judgment under Federal Rule of Evidence 702 and Federal Rule of Civil Procedure 56, (Dkt. No. 41), is **GRANTED** in its entirety.

    *s/ Stanley R. Chesler*
    STANLEY R. CHESLER, U.S.D.J.